UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

BRYCE FRANKLIN,

    Petitioner,

v.                                                         Civ. No. 22-427 MLG/GJF

ATTORNEY GENERAL FOR
THE STATE OF NEW MEXICO, *et al.*,

    Respondents.

## **PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

THIS MATTER is before the Court on Petitioner Bryce Franklin's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. [Doc. 1 ("Pet.")] ("Petition"). [1] Franklin alleges the New Mexico Corrections Department denied him adequate due process during a disciplinary hearing. As explained below, Franklin was afforded all the due process he was owed in the disciplinary proceeding. Thus, this Court RECOMMENDS Franklin's Petition be DENIED and this case DISMISSED with PREJUDICE.

### I.    BACKGROUND AND PROCEDURAL HISTORY

Franklin allegedly forged prison librarian Michael Fralick's signature on an affidavit Franklin submitted in an unrelated state court mandamus proceeding, *Bryce Franklin v. Regina Chacon, et al.*, Cause No. D-101-CV-2019-2516. [Doc. 7-1 at 230-31]. The affidavit Franklin claimed was from Fralick was written and signed in Franklin's hand and even spelled Fralick's name wrong. *Id.* ("Name Michael frailic"). After discovering this suspicious affidavit, prison officials summoned librarian Fralick to the Warden's office on January 24, 2020, to verify his signature. Fralick denied signing the affidavit and noted that his name was spelled incorrectly.

---

[1] This Court is treating Franklin's 28 U.S.C. § 2254 petition as one brought pursuant to 28 U.S.C. § 2241. [*See* Doc. 3 at 1].


Fralick then prepared an inmate misconduct report that identified the date of the incident as "1-24-2020," and the location of the incident as "Warden's Office." In this brief and barely legible incident report, Fralick mistakenly wrote, "On date and time above and at the law library Bryce Franklin . . . did sign my name to an affidavit of Bryce Franklin v. NM Dept of Public Service." [Doc. 7-1 at 226].

Franklin denied the misconduct and attempted to submit written questions to Fralick, asking whether Fralick witnessed the forgery, confiscated the affidavit, or signed a similar affidavit. [*Id*. at 246, 250]. The Warden denied these questions as irrelevant. [*Id*; Doc. 8, Exh. A (March 16, 2020, Disciplinary Hearing CD) at 1:15 (stating the Warden denied the questions)]. On March 16, 2020, the matter proceeded to a disciplinary hearing, where Franklin asserted that the charge "ma[de] no sense" because, among other things, "[librarian Fralick is] saying on date and time [in the report] at the law library, Bryce Franklin did sign my name to an affidavit, right? Okay, so the date is 1/24/20 that he's saying that I signed this. How did I sign his name at 1/24 when I have a filed version of this January 13th?" [Doc. 8, Exh. A at 6:23-6:15**;** 5:40-5:31]. The Disciplinary Hearing Officer corrected Franklin, explaining that January 24, 2020, was "the date [Fralick] discovered [the forgery]." [*Id*. 6:13-6:11]**.** Franklin also challenged the denial of his request to submit questions to Fralick and moved to dismiss on this and several other grounds. [*Id*. at 3:55-2:07, 10:02-10:00]. The Disciplinary Officer conveyed the Warden's message that Fralick's inmate misconduct report would serve as his statement during the hearing. [*Id*. at 3:32-3:24]. The officer also denied Franklin's motions to dismiss. [*See* Doc. 7-1 at 221].

The Disciplinary Officer found Franklin guilty and recommended the forfeiture of 60 days visitation privileges and 30 days good-time credits. [*Id*. at 220]. Franklin's administrative appeal was dismissed as untimely. [*See id*. at 186, 253].

After the state court denied Franklin habeas relief, he filed the instant petition, challenging the execution of his sentence. In his Petition, Franklin asserts that he was denied his constitutional right to due process because the Disciplinary Officer (1) failed to review exculpatory surveillance video (Ground One); (2) refused to submit written questions to librarian Fralick (Ground Two); and (3) found Franklin guilty in the absence of "some evidence" (Ground Three). [Doc. 1 at 3, 5, 6]. The State responded by denying each ground. [Doc. 7]. Franklin filed a Reply, which contained a 27-paragraph declaration. [Doc. 10 at 3-5]. The Court issued an Order for Supplemental Briefing to allow the State to respond to Franklin's additional factual assertions. [Doc. 13]. In its Supplemental Brief, the State focused its arguments on the merits of Franklin's Petition, asserting that Franklin was given all the due process required in a prison disciplinary proceeding. [Doc. 16].

## II.   PARTY ARGUMENTS[2]

Franklin maintains that prison officials denied him due process during the disciplinary proceedings. The main thrust of his argument is that the Disciplinary Officer denied his due process right to question librarian Fralick and introduce video footage. [Pet., Grounds 1, 2; Doc. 10 at 7-12]. Franklin also argues in his Reply but did not allege in his Petition that he should have been appointed a staff representative. [Doc. 10 at 13-14]. Finally, Franklin claimed in his Petition but

---

[2] The Court does not reach the exhaustion issue because there is a factual dispute regarding exhaustion and the Court is denying the Petition on the merits. *See Barrow v. Hudson*, No. 23-3026, 2023 WL 4054954, at *1 (D. Kan. May 9, 2023) ("The Court need not resolve the exhaustion issue . . . because petitioner has not shown that he is entitled to relief on the merits of his petition." (citing *Montez v. McKinna*, 208 F.3d 866 (10th Cir 2000)).

3

did not argue in his Reply that there was insufficient evidence supporting the disciplinary decision. [Pet, Ground 3].

The State responds that Franklin was afforded all the due process he was owed during this proceeding because his questions to librarian Fralick and review of the video footage were unnecessary, he had no due process right to a staff representative, and sufficient evidence supported the disciplinary decision. [Doc. 16].

### III.   APPLICABLE LAW

"The requirements of due process are flexible" in prison disciplinary proceedings and demand only that the inmate

> receive (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action.

*Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985) (*citing Wolff v. McDonnell*, 418 U.S. 539, 563-567 (1974)).

Franklin's Petition focuses on his right to call witnesses and present documentary evidence. This right is "necessarily circumscribed by the penological need to provide swift discipline in individual cases." *Bogue v. Vaughn*, 439 F. App'x 700, 704 (10th Cir. 2011) (citing *Ponte v. Real,* 471 U.S. 491, 495 (1985)). "Prison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses" or "disallow the presentation of . . . other evidence . . . ." *Id.* (internal quotation marks and citation omitted).

A decision to disallow the presentation of a witness or documentary evidence "will pass

4

due-process muster so long as the reasons for doing so are logically related to preventing undue hazards to institutional safety or correctional goals." *Id.* (internal quotation marks and citation omitted). In addition to yielding to institutional-safety concerns, the opportunity to call witnesses may be circumscribed because of "irrelevance [or] lack of necessity." *Wolff*, 418 U.S. at 567. Indeed, "the Supreme Court has noted" that these significant limitations on an inmate's right to call witnesses and present other evidence mean "that a constitutional challenge to a disciplinary hearing will rarely, if ever, be successful" because courts "should not be too ready to exercise oversight and put aside the judgment of prison administrators . . . ." *Bogue*, 439 F. App'x at 704 (citing *Ponte,* 471 U.S. at 499) (quotation omitted).

Where the disciplinary hearing meets the three due process requirements "the Court will not overturn the discipline as long as some evidence supports the decision." *Garcia v. Bowen*, 429 F. Supp. 3d 924, 930 (D.N.M. 2019); *see also Pair v. English*, No. 17-3078, 2017 WL 3386254, at *4 (D. Kan. Aug. 7, 2017) ("It is well-established that due process requires that the findings of a [Disciplinary Officer] be supported by 'some evidence' in the record.").

In general, the "some evidence" standard is a lenient one that is satisfied if "there was some evidence from which the conclusion of the administrative tribunal could be deduced and that it committed no error so flagrant as to convince a court of the essential unfairness of the" proceeding. *United States ex rel. Vajtauer v. Comm'r of Immigration*, 273 U.S. 103, 106 (1927); *accord Jim v. Bowen*, No. 18-cv-757, 2021 WL 149074, at *3 (D.N.M. Jan. 15, 2021). For example, in the inmate forgery context, courts have held that "some evidence" exists where there is a forged document and "the forger[y] benefited only" the accused, *see Phelps v. Vannatta*, 97 Fed. Appx. 669, 673-674 (7th Cir. 2004); *see also, e.g., Ford v. Rogers*, No. 94-1198, 1994 WL 416420, at *1

5

(8th Cir. Aug. 10, 1994) (finding some evidence from statements in disciplinary report along with statement from supporting witness and the falsified document itself).

Finally, the Court notes that "[e]ven if [it] finds a due process violation, the disciplinary decision" should be upheld if the error was harmless. *Garcia*, 429 F. Supp. 3d at 930 (*citing Grossman v. Bruce*, 447 F.3d 801, 805 (10th Cir. 2006)).

## IV. ANALYSIS

### A. Exculpatory Evidence

In grounds one and two of his Petition, Franklin argues the Disciplinary Officer failed to allow him to introduce exculpatory evidence in the form of his questions to librarian Fralick and video footage from the prison library. [Pet. at 3, 5]. These evidentiary arguments harbor a central misunderstanding of the factual basis for the disciplinary decision. The Disciplinary Officer never purported to know when or where Franklin forged librarian Fralick's affidavit, yet Franklin insists the date, time, and location of this forgery were material pieces of evidence against him. Because of this misunderstanding, Franklin attempted to introduce "exculpatory evidence" to refute that he forged the affidavit at the prison library on the date and time written in the misconduct report. Because Franklin's evidentiary requests would not controvert the evidence against him and would not aid the decision, the Warden and the Disciplinary Officer denied Franklin's requests.

The Disciplinary Officer listed the six pieces of documentary evidence he based his decision on along with the disciplinary hearing. [Doc. 7-1 at 220]. The evidence against Franklin was straightforward. In a state court mandamus proceeding, Franklin submitted an affidavit purporting to be from librarian Fralick. [*Id*. at 230-31]. But this affidavit was written and signed in Franklin's penmanship and even spelled Fralick's name wrong. [*Id*. ("Name Michael frailic")]. When the

6

Warden discovered this suspicious affidavit, he called librarian Fralick into his office to confirm its authenticity. Fralick stated the affidavit was forged, noted his name was spelled incorrectly, and prepared a misconduct report. [*Id*. at 226 (stating date of incident as 1-24-2020 and location as "Warden's office"); Doc. 8 at 6:13-6:11 (Disciplinary Officer clarifying during the hearing that the date and location in the misconduct report represent when librarian Fralick confirmed the affidavit was forged)]. The Disciplinary Officer never determined the date, time, or location of Franklin's forgery.

During the hearing and on this appeal, Franklin continues to attack the phantom finding that he forged the affidavit in the prison library on January 24, 2020. [Doc. 8, Exh. A at 6:23-6:15, 5:40-5:31 ("How did I sign his name at 1/24 when I have a filed version of this January 13th?"); Doc. 10 at 8 (arguing the questions are relevant to Fralick's knowledge of when the affidavit was created or confiscated)]. Franklin attempted to introduce "exculpatory evidence" to undermine this phantom fact in the form of questions to librarian Fralick. [Doc. 7-1 at 246, 250 (written questions for Fralick regarding whether Fralick witnessed Franklin forge the affidavit, confiscated the affidavit from Franklin, or signed a similar affidavit)]. These questions were denied as irrelevant because the disciplinary official did not believe Fralick witnessed the forgery or confiscated the affidavit. *Id.*

The Disciplinary Officer also denied Franklin's last question—whether Fralick signed a similar affidavit—as irrelevant because the investigation related only to this affidavit, not another document Fralick may or may not have signed on Franklin's behalf. *Id.* The Court also notes this evidence would have only further supported Franklin's guilt because it explains why Franklin wanted to commit the forgery and felt justified in forging the second affidavit. [Doc. 10 at 4, ¶ 11

(Franklin declaring that Fralick notarized a similar document, but Franklin did not want to file it in state court because he was unsure about someone notarizing their own statement); *also compare* Doc. 7-1 at 240-241 (notarized affidavit) *with id*. at 230-31 (forgery)]. This evidence would at best demonstrate that Franklin wanted the original affidavit to be proper, i.e., not notarized but signed by Fralick, and Franklin felt justified in forging the second document because Fralick already notarized a similar statement. This question was unnecessary to demonstrate Franklin's guilt and would have only been detrimental to Franklin's defense. Therefore, there was no error in avoiding prolonging the process to submit this unnecessary question to Fralick, and if any error did occur, it was harmless.

At bottom, the Disciplinary Officer was willing to assume all this exculpatory evidence tilted in Franklin's favor, demonstrating that Fralick never saw Franklin forge the affidavit, never confiscated the affidavit, and had previously signed a similar affidavit. But assuming all of that was true did not alter the finding that Franklin had forged this affidavit. Nor did any of this "exculpatory evidence" undercut the circumstantial evidence the Disciplinary Officer was relying on, namely, that the affidavit was written and signed in Franklin's penmanship, misspelled Fralick's name, Fralick confirmed the signature on the affidavit was not his, and only Franklin would have the motive to create this forgery. For all these reasons, the Disciplinary Officer denied Franklin's written questions to Fralick as irrelevant and stated that Fralick's incident report would act as his testimony for the hearing. [Doc. 7-1 at 246; Doc. 8, Exh. A at 3:32-3:24]. That reasoned determination did not violate Franklin's due process. *Bogue*, 439 F. App'x at 704 ("Prison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call

witnesses"); *Wolff*, 418 U.S. at 567 (the opportunity to call witnesses may be circumscribed because of "irrelevance [or] lack of necessity."). And if any error did occur, it was harmless.

Franklin also insists that he requested video footage of the library camera on January 24, 2020, even though there is no indication of this request in the disciplinary hearing recording. [Doc. 10 at 11; Doc. 8, Exh. A (hearing recording)]. This evidence was again unnecessary because there was never a factual finding that he forged the document at a specific location or time—the Disciplinary Officer never believed Franklin forged the affidavit in the library on January 24, 2020. Because the evidence was unnecessary, there was no error in prolonging the process to gather it. As before, if any error did occur, it was harmless.

Franklin's claim that he was denied due process by not being appointed a staff representative to review this footage or represent him is even easier to dispose of because this is simply not a federal due process requirement for prison disciplinary proceedings. *See Superintendent, Mass. Corr. Inst., Walpole*, 472 U.S. at 454. Additionally, Franklin's Petition failed to allege any ground for habeas relief related to him being denied a staff representative. [*See* Pet.]. Thus, this ground is not before the Court.

### B. Evidence Supporting the Decision

Franklin's third ground, which he fails to address in his Reply, alleges there was insufficient evidence to support the guilty determination. Pet. at 6. The Disciplinary Officer only needed "some evidence" supporting his determination and demonstrating he "committed no error so flagrant as to [show] essential unfairness . . . ." *United States ex rel. Vajtauer*, 273 U.S. at 106; *accord Jim*, 2021 WL 149074, at *3.

The Disciplinary Officer did not need to determine when or where Franklin forged the document. The following circumstantial evidence was sufficient to meet the lenient "some evidence" standard: the affidavit was written and signed in Franklin's penmanship, misspelled Fralick's name, Fralick confirmed it was not his signature, and only Franklin would have the motive to create this forgery. *see Phelps*, 97 Fed. Appx. at 673-674 (finding some evidence of forgery where it benefited only the accused); *Ford*, 1994 WL 416420, at *1 (finding some evidence of forgery from statements in disciplinary report and the falsified document itself).

## V.   CONCLUSION

For the foregoing reasons, the Court concludes that Franklin was afforded all the due process required in a prison disciplinary proceeding. The Court therefore **RECOMMENDS** Franklin's Petition be **DENIED** and this case **DISMISSED** with **PREJUDICE**. The Court **FURTHER RECOMMENDS** that no certificate of appealability be granted.

**SO RECOMMENDED**.

_____
THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1)(c). Any request for an extension must be filed in writing no later than seven days from the date of this filing. **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**